**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| STEPHEN BROWN, and<br>KIMBERLY BLANTON-WERNER,<br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>　　　　　　　　　Plaintiffs,<br>v.<br><br>CHRISTUS HEALTH<br>d/b/a TLRA,<br><br>　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)　**CLASS ACTION COMPLAINT**<br>)<br>)　Case No.: 6:19-cv-603<br>)<br>)<br>)　**JURY TRIAL DEMANDED**<br>)<br>)<br>) |

**COMPLAINT AND JURY DEMAND**

COME NOW, Plaintiffs Stephen Brown and Kimberly Blanton-Werner, individually and on behalf of all others similarly situated, by and through the undersigned counsel, and for their Complaint against Defendant, CHRISTUS Health d/b/a TLRA, under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), state as follows:

**JURISDICTION**

1.　　　This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d).

2.　　　Venue is proper because the acts and transactions occurred here, Plaintiffs reside here, and Defendant transacts business here.

**STANDING**

3.　　　Plaintiffs have a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

4.　　　Defendant's collection activities violated the FDCPA.

5.　　　Plaintiffs have thus suffered an injury as a result of Defendant's conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v.

<u>Defenders of Wildlife</u>, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); <u>Bellwood v. Dwivedi</u>, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

6.      "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" <u>Lane v. Bayview Loan Servicing, LLC</u>, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied him the right to information due to him under the FDCPA."); see also <u>Church v. Accretive Health, Inc.</u>, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

7.      "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." <u>Lane</u>, 2016 WL 3671467 at *4.

## **PARTIES**

8.      Plaintiff Steven Brown, (hereafter "Mr. Brown"), is a natural person currently residing in the state of Texas.

9.      Mr. Brown is a "consumer" within the meaning of the Fair Debt Collection Practices Act.

10.      Plaintiff, Kimberly Blanton-Werner (hereafter "Ms. Blanton-Werner"), is a natural person currently residing in the state of Texas.

11.     Ms. Blanton-Werner is a "consumer" within the meaning of the Fair Debt Collection Practices Act.

12.     Defendant CHRISTUS Health d/b/a/ TLRA ("TLRA") is a Texas corporation engaged in the business of collecting debts, using mails and telephone, in this state with its corporate headquarters located at 919 Hidden Ridge, Irving, Texas 75038.

13.     TLRA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

14.     TLRA regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS PERTAINING TO STEPHEN BROWN

15.     Mr. Brown is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than Defendant.

16.     Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from Mr. Brown.

17.     On or about December 18, 2018, TLRA sent Mr. Brown a collection letter. Said letter is attached and fully incorporated herein as **Exhibit A.**

18.     **Exhibit A** states, "this is an attempt to collect a debt by a debt collector."

19.     TLRA admits to being a debt collector.

20.     Said letter listed the "Client" as "CHRISTUS HEALTH CARE SYSTEM"

21.     Upon information and belief, one cannot find any such entity by the name of "CHRISTUS HEALTH CARE SYSTEM" registered with the Texas Secretary of State.[1]

---

[1] McGinty v. Prof'l Claims Bureau, Inc., 2016 U.S. Dist. LEXIS 143627 ([Defendant's] Collection Letters are similarly deficient because: (i) the letters' captions, which read "Re: NSLIJ PHYSICIANS - DEPT OF ORTHOPEDIC SURGERY" and "Re: ST CATHERINE OF SIENNA," fail to identify the Medical Providers as Plaintiffs' current creditors; and (ii) the letters, which state that "[t]he above

22.     Said letter additionally lists the account number as ending in "6948" with a total balance due of $148.11.

23.     The least sophisticated consumer is left in the dark as to whether or not TLRA's "client" is the current creditor, original creditor, or not a creditor at all, much less to whom the alleged debt is owed.

24.     Defendant failed to state effectively "the name of the creditor to whom the debt is owed."[2]

25.     On or about December 18, 2018, TLRA sent Mr. Brown another collection letter. Said letter is attached and fully incorporated herein as **Exhibit B**.

26.     Said letter listed the "Client" as "CHRISTUS HEALTH CARE SYSTEM."

---

referenced account has been referred to our offices for collection," fail to make clear on whose behalf PCB was acting when it sent the Collection Letters.); Clomon v. Jackson, 988 F.2d 1314, 1993 U.S. App. LEXIS 4965 (2d Cir. Conn. 1993); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 2003 U.S. App. LEXIS 3409, 55 Fed. R. Serv. 3d (Callaghan) 746 (2d Cir. N.Y. 2003); Savino v. Computer Credit, 164 F.3d 81, 1998 U.S. App. LEXIS 31652, 42 Fed. R. Serv. 3d (Callaghan) 1154 (2d Cir. N.Y. 1998); McStay v. I.C. Sys., 308 F.3d 188, 2002 U.S. App. LEXIS 21542 (2d Cir. N.Y. 2002) see also, 15 U.S.C. § 1692g(b).; Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008) citing Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996).

[2] Beltrez v. Credit Collection Servs., 2015 U.S. Dist. LEXIS 160161 (E.D.N.Y. Nov. 25, 2015) ("As Plaintiff has stated a plausible claim that the Defendant's failure to explicitly and accurately name the creditor to whom the debt is owed would likely confuse the least sophisticated consumer as to the name of the actual creditor to whom the debt is owed, Defendant's motion must be denied."); Schneider v. TSYS Total Debt Mgmt., Inc., No. 06-C-345, 2006 WL 1982499 (B.D. Wis. July 13, 2006) ("[T]hroughout its briefs, [the debt collector] implies that the full and complete name of the creditor includes the name 'Target.' Yet, without the full and complete name of the creditor, be it Target National Bank, Target Customs Brokers, Inc., or a corporation that simply identifies itself by the acronym 'T.A.R.G.E.T,' it would be impossible for this court to decide whether [the debt collector] sufficiently identified the creditor to whom [the consumer's] debt is owed. Moreover, given that the full and complete name of the creditor is unknown, at least to the court, and given the fact-based nature of the confusing question, it would not be appropriate, at this early stage of the litigation, for the court to determine whether the unsophisticated debtor would be confused by the collection letter.")

27.     Again, upon information and belief, one cannot find any such entity by the name of "CHRISTUS HEALTH CARE SYSTEM" registered with the Texas Secretary of State.

28.     Here, the account number ends in "5016," yet also has a balance owed of $148.11.

29.     Mr. Brown would be unaware of these two account numbers are for two separate amounts that are coincidentally each $148.11, if the two accounts have the aggregated total of $148.11, or if two account numbers are assigned to the same amount owed.

30.     This is confusing and misleads the consumer as to the alleged amount owed.

31.     If Mr. Brown were to attempt to decipher to whom the debt is owed based on the phrase "Christus Health Care System," he would be baffled as to which of the following choices it may be: Any of the Christus Good Shepherd Medical Centers; the Christus Mother Frances Medical Centers; Christus Santa Rosa Medical Centers; Christus Southeast Texas Medical Centers; Christus Spohn Medical Centers; Christus St. Michael Medical Centers; Christus Beaumont Medical Centers; Christus Family Health Centers; Christus Family Medicines; or another of the over 200 options just in Texas alone.

32.     The least sophisticated consumer is left with a plethora of possible locations where the alleged debts may have been accrued in Texas alone. Christus Health is also located in New Mexico, Louisiana, and Arkansas, in addition to the international locations in Mexico, Chile, and Colombia.

33.     Upon information and belief, within these hundreds of locations, there are also numerous subsidiaries and groups.

34.     The least sophisticated consumer, even after researching, would still be uncertain as to who "CHRISTUS HEALTH CARE SYSTEM" is actually referring to.

35.     The least sophisticated consumer could at best narrow down the options but would still be uncertain as to whether the alleged debt was a service they used, a mistake, already paid, etc., as they would still be unsure as to whom the alleged debt is owed.

## FACTUAL ALLEGATIONS PERTAINING TO
## KIMBERLY BLANTON-WERNER

36.     Ms. Blanton-Werner is a natural person allegedly obligated to pay a debt asserted to be owed to a creditor other than Defendant.

37.     Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from Ms. Blanton-Werner

38.     On or about October 9, 2019, TLRA sent Ms. Blanton-Werner a collection letter. Said letter is attached and fully incorporated herein as **Exhibit C**.

39.     **Exhibit C** states, "this is an attempt to collect a debt by a debt collector."

40.     TLRA admits to being a debt collector.

41.     Said letter listed the "Client" as "CHRISTUS TRINITY MOTHER FRANCES CLINICS".

42.     Upon information and belief, one cannot find any such entity by the name of "CHRISTUS TRINITY MOTHER FRANCES CLINICS" registered with the Texas Secretary of State.[3]

---

[3] McGinty v. Prof'l Claims Bureau, Inc., 2016 U.S. Dist. LEXIS 143627 ([Defendant's] Collection Letters are similarly deficient because: (i) the letters' captions, which read "Re: NSLIJ PHYSICIANS - DEPT OF ORTHOPEDIC SURGERY" and "Re: ST CATHERINE OF SIENNA," fail to identify the Medical Providers as Plaintiffs' current creditors; and (ii) the letters, which state that "[t]he above referenced account has been referred to our offices for collection," fail to make clear on whose behalf PCB was acting when it sent the Collection Letters.); Clomon v. Jackson, 988 F.2d 1314, 1993 U.S. App. LEXIS 4965 (2d Cir. Conn. 1993); Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 2003 U.S. App. LEXIS 3409, 55 Fed. R. Serv. 3d (Callaghan) 746 (2d Cir. N.Y. 2003); Savino v. Computer Credit, 164 F.3d 81, 1998 U.S. App. LEXIS 31652, 42 Fed. R. Serv. 3d (Callaghan) 1154 (2d Cir. N.Y. 1998); McStay v. I.C. Sys., 308 F.3d 188, 2002 U.S. App. LEXIS 21542 (2d Cir. N.Y. 2002) see also, 15 U.S.C. § 1692g(b).; Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008) citing Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996).

43.    The least sophisticated consumer is left in the dark as to whether or not TLRA's "client" is the current creditor, original creditor, or not a creditor at all, much less to whom the alleged debt is owed.

44.    Defendant failed to state effectively "the name of the creditor to whom the debt is owed."[4]

45.    The least sophisticated consumer is left confused as to who the current creditor or original creditor is in this case.[5]

---

[4] Beltrez v. Credit Collection Servs., 2015 U.S. Dist. LEXIS 160161 (E.D.N.Y. Nov. 25, 2015) ("As Plaintiff has stated a plausible claim that the Defendant's failure to explicitly and accurately name the creditor to whom the debt is owed would likely confuse the least sophisticated consumer as to the name of the actual creditor to whom the debt is owed, Defendant's motion must be denied."); Schneider v. TSYS Total Debt Mgmt., Inc., No. 06-C-345, 2006 WL 1982499 (B.D. Wis. July 13, 2006) ("[T]hroughout its briefs, [the debt collector] implies that the full and complete name of the creditor includes the name 'Target.' Yet, without the full and complete name of the creditor, be it Target National Bank, Target Customs Brokers, Inc., or a corporation that simply identifies itself by the acronym 'T.A.R.G.E.T,' it would be impossible for this court to decide whether [the debt collector] sufficiently identified the creditor to whom [the consumer's] debt is owed. Moreover, given that the full and complete name of the creditor is unknown, at least to the court, and given the fact-based nature of the confusing question, it would not be appropriate, at this early stage of the litigation, for the court to determine whether the unsophisticated debtor would be confused by the collection letter.")

[5] Lee v. Forster & Garbus LLP, 12 cv 420, 2013 WL 776740 (E.D. N.Y. 2013) ("Defendants fare no better insisting that any misidentification in the Collection Letter was immaterial. As an initial matter, this argument only could apply to the alleged Section 1692e and Section 1692f violations. Section 1692g[(a)](2) specifically requires debt collectors to identify the creditor to whom the debt is owed in the initial communication or within five days of the initial communication. There is nothing in the statute requiring the identity of the creditor to be "material" to the communication. In addition, even assuming, arguendo, that a deceptive statement must be material to violate Section 1692e and Section 1692f, failing to identify the creditor here after "pay to the order of" on the payment check to ensure that the debt is satisfied. Accordingly, Defendants' materiality argument is without merit."), Pardo v. Allied Interstate, LLC, 2015 U.S. Dist. LEXIS 125526 (S.D. Ind. Sept. 21, 2015); Walls v. United Collection Bureau, Inc., 2012 U.S. Dist. LEXIS 68079, *4-5, 2012 WL 1755751 (N.D. Ill. May 16, 2012), Deschaine v. Nat'l Enter. Sys., 2013 U.S. Dist. LEXIS 31349, *3-5 (N.D. Ill. Mar. 7, 2013).

46.    If the least sophisticated consumer were to attempt to decipher from the given client name to whom the debt is owed based on the "Clinics" placed at the end, he or she would still be baffled as to which of the following locations it may be: Christus Trinity Clinic – Athens; Christus Trinity Clinic – Buffalo; Christus Trinity Clinic – Canton; Christus Trinity Clinic – Chandler; Christus Trinity Clinic – Elkhart; Christus Trinity Clinic – Emory; Christus Trinity Clinic – Fairfield; Christus Trinity Clinic – Grapeland; Christus Trinity Clinic – Henderson; Christus Trinity Clinic – Holly Lake; Christus Trinity Clinic – Jacksonville; Christus Trinity Clinic – Kilgore; Christus Trinity Clinic – Lake Palestine; Christus Trinity Clinic – Lindale; Christus Trinity Clinic – Mineola; Christus Trinity Clinic – Palestine; Christus Trinity Clinic – Quitman; Christus Trinity Clinic – Sulphur Springs; Christus Trinity Clinic – Tennessee Colony; Christus Trinity Clinic – Tyler; Christus Trinity Clinic – Whitehouse; Christus Trinity Clinic – Winnsboro, or a Christus Trinity Clinic outside of Texas.

47.    The least sophisticated consumer is left with a numerous amount of possible locations where the alleged debts may have been accrued in Texas alone. Christus Health is also located in New Mexico, Louisiana, and Arkansas, in addition to the international locations in Mexico, Chile, and Colombia.

48.    Upon information and belief, within these hundreds of locations, there are also numerous subsidiaries and groups.

49.    The least sophisticated consumer, even after researching, would still be uncertain as to who "CHRISTUS TRINITY MOTHER FRANCES CLINICS" is actually referring to.

50.    The least sophisticated consumer could at best narrow down the options but would still be uncertain as to whether the alleged debt was a service they used, a mistake, already paid, etc., as they would still be unsure as to whom the alleged debt is owed.

**FACTUAL ALLEGATIONS PERTAINING TO ALL NAMED PLAINTIFFS**

51.    **Exhibit A**, **Exhibit B**, and **Exhibit C** include the language "We have been authorized *by our client*…"(emphasis added).

52.    Upon information and belief, TLRA is actually one in the same as CHRISTUS Health.

53.    Upon information and belief, CHRISTUS Health could not "place" an account with TLRA, as they are one in the same.

54.    By implying that this alleged debt has been transferred to a new party in order to collect, TLRA misleads the least sophisticated consumer.

55.    Further, both letters presumably cite CHRISTUS Health subsidiaries as their "client."

56.    Christus Health cannot be a "client" of TLRA when in fact, CHRISTUS Health *is* TLRA.

57.    Upon information and belief, CHRISTUS Health is the owner and controller of TLRA, does business under the name "TLRA," and is the same company as TLRA.[6]

58.    This furthers the misrepresentation and confusion to the least sophisticated consumer who is given the impression that TLRA is a completely detached third party who has merely been hired to inquire about an alleged debt.

59.    Beyond this, **Exhibit A**, **Exhibit B**, and **Exhibit C** states, "Our client provided a service to you and expects to be paid for the service. We see no reason as to why you have refused to pay the outstanding delinquent debt."

60.    The only reason for this language is to belittle the consumer.

---

[6]See <u>Cox v. Huntsman</u>, 408 F.3d. 989 (8th Cir. 20005). (The Court found that the defendant, Cox, owned and controlled "Ozark Professional Collections" and thus the District Court was correct in finding Cox in violation of 15 U.S.C. § 1692(e)(14). Some factors discussed by the court included: Cox was the registered owner and user of the d/b/a "Ozark Professional Collections"; Ozark was an unincorporated division of Cox; approximately 90% of the debt collected by Ozark was for Cox; and all employees of Ozark were paid by Cox.)

61.    In reality, TLRA knew, or should have known, that there are several reasons a consumer may not have paid a debt including for example, the consumer wishing to dispute the debt.

62.    Upon information and belief, TLRA attempts to shame Plaintiffs into making payments they might not have otherwise made.

63.    Further, **Exhibit A**, **Exhibit B**, and **Exhibit C** states, "We have been authorized by our client to take all lawful measures necessary to collect the full balance due. It is imperative that you call this office immediately to make arrangements to pay this account."

64.    Defendant attempts to make the least sophisticated consumer believe that some ominous "lawful measures" could befall him or her if payment is not remitted.

65.    Therefore, Defendant clearly intended the language of the letter to be threatening, disparaging, and demeaning.

66.    Defendant's letters are aggressive and combative.

67.    These statements are clearly veiled threats used as a pressure tactic and aimed to manipulate the least sophisticated consumer into making payment on the alleged debt out of fear of reprisal.

68.    This veiled threat is egregious in that it does not even specify what exactly will befall Plaintiffs if they were to not pay on the alleged debt.

69.    The least sophisticated consumer is left to ponder over what these "lawful measures" could potentially be if they didn't make payment on the alleged debt or call the collector.

70.    Upon information and belief, the veiled threats are made in a vague fashion to confuse and scare the least sophisticated consumer in order to convince them to make payments before any of these implied repercussions can befall them.

71.    Again, it is unclear to the least sophisticated consumer if these "lawful measures" include: the filing of a lawsuit against the least sophisticated consumer, reporting the least sophisticated

consumer to the credit reporting agencies, calling the least sophisticated consumer's cell phone with the intent to harass them into making payments, threatening the least sophisticated consumer with the prosecution of a crime, threatening to garnish the least sophisticated consumer's wages, threatening to put a lien on the least sophisticated consumer's home, etc.

72.     These statements are clearly meant to shame Plaintiffs into paying the alleged debts.

73.     This statement does not in any way inform the Plaintiffs of their rights, but instead attempts to belittle Plaintiffs.

74.     Upon information and belief, TLRA attempts to trick the least sophisticated consumer into believing that his or her only option is to call the debt collector and pay.

75.     This attempts to force Plaintiffs to forego their rights to consider all of their options before calling the company that wishes to force collection activities upon them.

76.     **Exhibit A, Exhibit B,** and **Exhibit C** are deceptive and misleading in violation of 15 U.S.C. §§ 1692e and 1692e(10).

77.     **Exhibit A, Exhibit B,** and **Exhibit C** are deceptive and misleading as it failed to correctly identify the name of the creditor to whom the debt is owed in violation of 15 U.S.C. §§ 1692e, 1692e(10).

78.     **Exhibit A, Exhibit B,** and **Exhibit C** are deceptive and misleading as it uses a business, company, or organization name other than the true name of the debt collector's business, company or organization in violation of 15 U.S.C. §§ 1692e, 1692e(14).[7]

---

[7] See <u>Cox v. Huntsman</u>, 408 F.3d. 989 (8th Cir. 20005). (The Court found that the defendant, Cox, owned and controlled "Ozark Professional Collections" and thus the District Court was correct in finding Cox in violation of 15 U.S.C. § 1692(e)(14). Some factors discussed by the court included: Cox was the registered owner and user of the d/b/a "Ozark Professional Collections"; Ozark was an unincorporated division of Cox; approximately 90% of the debt collected by Ozark was for Cox; and all employees of Ozark were paid by Cox.)

79.     Plaintiffs suffered injuries-in-fact by being subjected to unfair and abusive practices of the Defendant.

80.     Plaintiffs suffered actual harm by being the target of the Defendant's misleading debt collection communications.

81.     Defendant violated the Plaintiffs' right not to be the target of misleading debt collection communications.

82.     Defendant violated the Plaintiffs' right to a truthful and fair debt collection process.

83.     Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiffs' alleged debts.

84.     Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to the Defendant's collection efforts.

85.     The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendant's false representations misled the Plaintiffs in a manner that deprived them of their rights to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

86.     These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

87.     Plaintiffs seek to end these violations of the FDCPA. Plaintiffs have suffered damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment. Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including, declaratory relief, and damages.

88.     All of Defendant's actions complained of herein occurred within one year of the date of this Complaint.

89.     Defendant's conduct has caused Plaintiffs to suffer damages including but not limited to the loss of time incurred by Plaintiffs as well as attorneys' fees paid for advice regarding their situation.

90.     Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

91.     Here, Plaintiffs have suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of Defendant's conduct.

92.     Plaintiffs' injury-in-fact is fairly traceable to the challenged representations of Defendants.

93.     Plaintiffs' injury-in-fact is likely to be redressed by a favorable decision in this Court.

94.     Defendant's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997) (When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, Goswami, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

## CLASS ALLEGATIONS

95.     This action is brought as a class action. Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

96.     The identities of all class members are readily ascertainable from the records of TLRA and those business and governmental entities on whose behalf it attempts to collect debts.

97.     Excluded from the Plaintiffs' Class is TLRA and all officers, members, partners, managers, directors, and employees of TLRA, and all of their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

98.     There are questions of law and fact common to the Plaintiffs' Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether TLRA's communications with the Plaintiffs, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act.

99.     The Plaintiffs' claims are typical of the class members, as all are based upon the same facts and legal theories.

100.    The Plaintiffs will fairly and adequately protect the interests of the Plaintiffs' Class defined in this complaint. The Plaintiffs have retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiffs nor their attorneys have any interests, which might cause them not to vigorously pursue this action.

101.    This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    a.  **Numerosity**: The Plaintiffs are informed and believe, and on that basis alleges, that the Plaintiffs' Class defined above is so numerous that joinder of all members would be impractical.

    b.  **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiffs' Class and those questions predominate over any questions or issues involving only individual class members. The principal issues are

whether TLRA's communications with the Plaintiffs, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act.

      c.   **<u>Typicality</u>**: The Plaintiffs' claims are typical of the claims of the class members. Plaintiffs and all members of the Plaintiffs' Class defined in this complaint have claims arising out of the Defendant's common uniform course of conduct complained of herein.

      d.   **<u>Adequacy</u>**: The Plaintiffs will fairly and adequately protect the interests of the class members insofar as Plaintiffs have no interests that are adverse to the absent class members. The Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiffs nor their counsel have any interests, which might cause them not to vigorously pursue the instant class action lawsuit.

      e.   **<u>Superiority</u>**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudication which could establish incompatible standards of conduct for Defendant who, upon information and belief, collects debts throughout the United States of America.

102.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the above stated claims, violate provisions of the Fair

Debt Collection Practices Act, and is tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

103.    Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiffs' Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

104.    Further, TLRA has acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

105.    Depending on the outcome of further investigation and discovery, Plaintiffs may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

106.    This cause of action is brought on behalf of Plaintiffs and the members of a class.

107.    The class consists of all persons whom Defendant's records reflect resided in the State of Texas and who were sent a collection letter in substantially the same form letter as the letters sent to the Plaintiffs on or about December 18, 2018 (**Exhibit A**), December 18, 2018 (**Exhibit B**), and October 9, 2019 (**Exhibit C**); and (a) the collection letters were sent to a consumer seeking to collect a debt for personal, family or household purposes; and (b) the collection letters were sent from one year before the date of this Complaint to the present; and (c) the collection letters were not returned by the postal service as undelivered; and (d) the Plaintiffs asserts that the letters contained violations of 15 U.S.C. §§ 1692e, 1692e(10), 1692e(14), 1692g and 1692g(a)(2) for failing to correctly identify the name of the creditor to whom the debt is owed, as well as for failing to correctly identify the actual identity of the debt collector.

## COUNT I: Violations Of § 1692g(a)(2) Of The FDCPA – Failure to Identify the Name of the Current Creditor

108.    Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully stated herein.

109.    Section 1692g of the FDCPA requires that, within 5 days of Defendant's first communication to a consumer, it had to provide Plaintiff with an effective validation notice, containing, among other disclosures, "the name of the creditor to whom the debt is owed" see, 15 U.S.C. § 1692g(a)(2).

110.    Defendant's form collection letters violated § 1692g(a)(2) of the FDCPA because they failed to identify the current creditor to whom the debt was owed, see, Janetos, 825 F.3rd at 321-23; see also, Long v. Fenton & McGarvey Law Firm P.S.C., 223 F. Supp. 3d 773 (S.D. Ind. 2016); Pardo v. Allied Interstate, No. 1:14-cv-01104-SEB-DML, 2015 U.S. Dist. LEXIS 125526 (S.D. Ind. Sep. 21, 2015); Deschaine v. National Enterprise Systems, No. 12 C 50416, 2013 U.S. Dist. LEXIS 31349 (N.D. Ill. Mar. 7, 2013); Walls v. United Collection Bureau, No. 11 C 6026, 2012 U.S. Dist. LEXIS 68079 (N.D. Ill. May 16, 2012); Braatz v. Leading Edge Recovery Solutions, No. 11 C 3835, 2011 U.S. Dist. LEXIS 123118 (N.D. Ill. Oct. 20, 2011).

111.    Defendant's violation of § 1692g of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, individually and on behalf of all others similarly situated, pray that this Court:

A.    Declare that Defendant's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, and all others similarly situated, and against Defendant, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## COUNT II: Violations Of § 1692e(10) Of The FDCPA – False, Deceptive, Or Misleading Collection Actions

112.    Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully stated herein.

113.    Section 1692e(10) of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

114.    Making a false statement of the name of the current creditor violates § 1692e(10) of the FDCPA.

115.    Defendant's communications with Plaintiffs were deceptive and misleading.

116.    Defendant used unfair and unconscionable means to attempt to collect the alleged debt.

117.    Defendant's violation of § 1692e(10) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, individually and on behalf of all others similarly situated, prays that this Court:

A.    Declare that Defendant's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, and all others similarly situated, and against Defendant, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692e(14) Of The FDCPA – False, Deceptive, Or Misleading Collection Actions

118.    Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully stated herein.

119.    Section 1692e(14) of the FDCPA prohibits a debt collector from any business company, or organization name other than the true name of the debt collector's business, company, or organization.

120.    Purporting to collect on behalf of a separate entity, when in fact Defendant is that entity, violates § 1692e(14) of the FDCPA.

121.    Defendant's communications with Plaintiffs were deceptive and misleading.

122.    Defendant used unfair and unconscionable means to attempt to collect the alleged debt.

123.    Defendant's violation of § 1692e(14) of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, individually and on behalf of all others similarly situated, prays that this Court:

A.    Declare that Defendant's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, and all others similarly situated, and against Defendant, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## COUNT IV: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

124.    Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully stated herein.

125.    Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

126.    Defendant's communications with Plaintiffs were meant to shame, embarrass, and harass Plaintiffs by misrepresenting the alleged debts status.

127.    Defendant used threatening and demeaning language repeatedly toward Plaintiffs.

128.    Defendant's violation of § 1692d of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, individually and on behalf of all others similarly situated, prays that this Court:

A.    Declare that Defendant's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiffs, Stephen Brown and Kimberly Werner-Blanton, and all others similarly situated, and against Defendant, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

**COUNT V: Violations Of § 1692f Of The FDCPA –Unfair Practices**

129.    Plaintiffs incorporate by reference all other paragraphs of this Petition as if fully stated herein.

130.    Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

131.    Defendant's communications with Plaintiffs were deceptive and misleading.

132.    Defendant used unfair and unconscionable means to attempt to collect the alleged debt.

133.    Defendant threatened Plaintiffs in vague but aggressive manners, in addition to hiding the actual creditor to whom the debt is owed.

134.    Defendant's violation of § 1692f of the FDCPA renders it liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, individually and on behalf of all others similarly situated, prays that this Court:

A.       Declare that Defendant's debt collection actions violate the FDCPA;

B.       Enter judgment in favor of Plaintiffs, Stephen Brown and Kimberly Blanton-Werner, and all others similarly situated, and against Defendant, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.       Grant other such further relief as deemed just and proper.

### JURY DEMAND

135.    Plaintiffs demand a trial by jury on all Counts so triable.

Dated: December 17, 2019.

Respectfully Submitted,

**HALVORSEN KLOTE**

By:      /s/ Samantha J. Orlowski

Samantha J. Orlowski, #72058
Joel S. Halvorsen, #67032
680 Craig Road
Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
sam@hklawstl.com
joel@hklawstl.com

*Attorneys for Plaintiff*